# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| v. | ) | 16 C 5961 |
| | ) | |
| ALEX RAMOS, | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

This matter comes before the Court on Defendant Alex Ramos' ("Ramos") *pro se* petition to vacate, correct, or set aside his sentence pursuant to a successive 28 U.S.C. § 2255 motion filed on May 16, 2016. For the reasons set forth below, Ramos' motion is denied.

## BACKGROUND

In the 1990s, while working as a police officer on Chicago's West Side, the Chicago Police Department's Internal Affairs Division ("IAD") and the Federal Bureau of Investigation ("FBI") investigated Ramos and several of his fellow officers for narcotics trafficking. The IAD and FBI accused Ramos of providing protection to drug dealers, regularly taking money and drugs from rival dealers during street stops or home searches, and, on two occasions, possessing a firearm when he acted as an escort for an undercover agent who held himself out to be a cocaine trafficker. *United States v. Ramos*, 1998 WL 155932, at *1 (N.D. Ill. Apr. 3, 1998).

On July 2, 1997, Ramos was charged in a superseding indictment as follows: racketeering, in violation of 18 U.S.C. §§ 1961, 1962 (Counts 1, 2); extortion, in violation of 18 U.S.C. § 1951 (Counts 18, 30); distributing cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846, and 18 U.S.C. § 2 (Counts 19, 31, 36); possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count 38); and using and carrying a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c) (Counts 20, 32). On May 21, 1998, a jury found Ramos guilty of each charge, and on October 18, 2001, this Court sentenced Ramos to 592 months' imprisonment, as follows: concurrent 240-month terms of imprisonment on Counts 1, 2, 18, 19, 30, 31, and 36; followed by consecutive terms of 52 months on Count 38; 60 months on Count 20; and 240 months on count 32.

Ramos appealed, arguing various trial errors and contending that the Court erred in denying his motion for downward departure. *United States v. Moore*, 363 F.3d 631 (7th Cir. 2004), rehearing denied, *Ramos v. United States*, 543 U.S. 1094 (2005). On April 9, 2004, Ramos' conviction and sentence were affirmed. *Id*.

Ramos subsequently filed a § 2255 petition, arguing that his attorney was ineffective regarding trial and evidentiary matters, and that he was entitled to resentencing pursuant to *United States v. Booker*, 543 U.S. 220, 267 (2005). *United States v. Ramos*, 2006 WL 2710664, at *2 (N.D. Ill. Sept. 20, 2006). On September 20, 2006, we denied Ramos' first § 2255 motion. *Id.*

On May 16, 2016, Ramos filed an application for authorization to file this successive § 2255 motion, asserting his claim pursuant to the recent Supreme Court decision in *Johnson v. United States*, 135 S.Ct. 2551 (2015). On June 6, 2016, the Seventh Circuit granted Ramos' application and authorized this Court to consider his claim.

## LEGAL STANDARD

A successive § 2255 motion is permissible only if certified by the court of appeals to contain newly discoverable evidence, or, as is relevant to Ramos' motion, a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(1), (2). In *Welch v. United States*, 136 S.Ct. 1257, 1265 (2016), the Supreme Court retroactively instituted its holding in *Johnson*, 135 S.Ct. at 2551, that the Armed Career Criminal Act's ("ACCA") residual clause is unconstitutionally vague. On May 16, 2016, acting *pro se* and pursuant to the *Johnson* holding, Ramos timely filed his successive § 2255 motion. 28 U.S.C. § 2255(f)(3).

A document filed *pro se* must be "'liberally construed,' and 'held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e).

Here, Ramos challenges his § 924(c) convictions under *Johnson*. Federal law forbids convicted felons and drugs users to "ship, possess, and receive firearms."

3

*Johnson*, 135 S.Ct. at 2555; 18 U.S.C. § 922(g). If a violator of this ban has three or more earlier convictions for a serious drug offense or a violent felony, the ACCA increases his prison term to a minimum of 15 years and a maximum of life. *Id.*; 18 U.S.C. § 924(e)(1). The ACCA defines "violent felony" as a felony that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*." 18 U.S.C. § 924(e)(2)(B). (emphasis added). The *Johnson* court held that the emphasized portion (the "residual clause") is unconstitutionally vague and the imposition of increased sentences under the clause violates due process. *Johnson*, 135 S.Ct. at 2557, 2563.

Six months after the *Johnson* ruling, the Seventh Circuit extended the *Johnson* ruling to include convictions for "crimes of violence." The court found that the statutory definition of "crimes of violence," 18 U.S.C.A §16(b), is "materially indistinguishable from the ACCA's residual clause" and "unconstitutionally vague in light of *Johnson*." *U.S. v. Vivas-Ceja*, 808 F.3d 719, 720 (7th Cir. 2015). Therefore, any increased sentence imposed for the carrying of a firearm in relation to a crime of violence runs afoul of *Johnson* and is no longer viable as grounds for enhanced sentencing.

However, in *Johnson*, the Supreme Court expressly noted that its decision "does not call into question application of the Act to the four enumerated offenses, or

4

the remainder of the Act's definition of violent felony." *Johnson*, 135 S.Ct. at 2563. Accordingly, a felony offense "that has as an element the use, attempted use, or threatened use of physical force against the person of another" is still a constitutionally valid predicate offense for an increased sentence under 18 U.S.C. § 924. Neither does *Johnson* affect the ACCA's definition of "serious drug offense." *See* 18 U.S.C. § 924(e)(2)(A). A conviction for carrying a firearm in relation to a drug-related offense, then, remains viable.

## DISCUSSION

### I. Contentions of the Parties

Ramos' relevant contentions regarding his convictions are as follows. Ramos alleges that he was sentenced to two separate twenty-year terms in connection with carrying or using a firearm in relation to an attempted extortion and racketeering. Ramos argues that he is serving forty extra years of imprisonment based on § 924(c) crimes predicated on these two crimes of violence, extortion and racketeering. Finally, Ramos contends that it was not a jury who found him guilty of the § 924(c) crimes, but rather a judge who supplied facts to impose the additional forty years.

In support, Ramos points to his Judgement and Commitment Order, which states that his 18 U.S.C. § 924(c) counts are "for possession of a firearm in relation to a crime of violence." Citing *United States v. Eskridge*, 445 F.3d 930 (7th Cir. 2006) and *United States v. Zepeda*, 329 Fed.Appx. 647 (7th Cir. 2009), Ramos alleges that because there is supposedly no record of his oral sentencing, the crime listed on his

5

Judgment and Commitment Order controls, and his sentence must be corrected according to *Johnson*'s proscriptions regarding crimes of violence.

The United States concedes that Ramos' Judgment and Commitment Order indicates that his § 924(c) counts are for possession of a firearm in relation to a crime of violence. However, the United States contends that this is the result of a clerical error and that Ramos' 924(c) conviction was indeed for its relation to drug trafficking. If the United States' assertion is correct, then Ramos' conviction would indeed fall beyond the scope of *Johnson* and reconsideration of his sentence under that case would be improper.

## II. Clerical Error

"If an inconsistency exists between an oral and the later written sentence, the sentence pronounced from the bench controls." *U.S. v. Becker*, 36 F.3d 708, 710 (7th Cir. 1994). "When interpreting a sentencing order, if the hearing transcript is unambiguous we need not resort to extrinsic evidence such as the written sentencing order, the defendant's understanding of the sentence or the judge's intent." *Id*. at 711. If a latent ambiguity in an oral sentence does exist – a latent ambiguity only emerges contextually, when the circumstances surrounding the text are considered – then further inquiry is required. *U.S. v. Cephus*, 684 F.3d 703, 710 (7th Cir. 2012). Such an ambiguity between the court's oral sentence and written sentencing order mandates examination of the record as a whole to determine the court's intention in imposing sentence. *U.S. v. Gibas*, 328 F.2d 833, 834 (7th Cir. 1964).

### a. The Sentencing Hearing

Indeed, the record of Ramos' sentencing hearing is illuminating, the transcript from which includes numerous in-court discussions about the hefty sentencing consequences of the 924(c) convictions, or "gun charges," as the Court and present counsel frequently termed them.  In a telling monologue regarding the fairness of the charges initially levied against Ramos, the Assistant United States Attorney bluntly states that Ramos' 924(c) charge arose because of "only the drug escort."  The prosecutor differentiates this charge from another defendant in the case who was not charged with a 924(c) violation by remarking that that individual's conduct consisted only of "extortion."  This comment comes in the middle of a lengthy dispute between the parties focused almost exclusively on Ramos' 924(c) charges, and at no point is any confusion or ambiguity expressed over the specifics of the charge.

Towards the end of the parties' argument about the 924(c) charge, the prosecutor points out that the other defendant not charged with a 924(c) violation avoided such a charge because "he was not involved in the escorts of kilograms of cocaine."  Once again, this comment is not disputed, but seemingly accepted as the unfortunate truth of Ramos' predicament.  It is apparent to the Court from the transcript that, at the time and throughout the sentencing hearing, the Court, Ramos, defense counsel, and the United States were fully aware that Ramos' 924(c) charges arose from his drug trafficking activity.

The Court is comfortable in its conclusion that Ramos' sentence was imposed unambiguously. However, the Court is equally aware that it declined to explicitly state that the 924(c) convictions and consequent sentencing requirements attended Ramos' drug trafficking crimes, as opposed to crimes of violence. Therefore, because the record is not as precise as it could have been, a deeper probing of the record is appropriate. We now analyze the relevant portions of the record to make certain that the Court did in fact intend to sentence Ramos for a conviction of carrying a firearm in relation to drug-trafficking.

### b. The Charging Language in the Superseding Indictment

On July 18, 1997, Ramos was charged in a superseding indictment as follows:

> "Counts 1, 2: racketeering – in violation of 18 U.S.C. §§ 1961(1) and (5), and § 1962(c) and (d).
> Counts 18, 30: extortion – in violation of 18 U.S.C. § 1951
> Counts 19, 31, 36: distributing cocaine – in violation of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 2.
> Counts 20, 32: using and carrying a firearm during and *in relation to a drug trafficking offense – in violation of 18 U.S.C. § 924(c),*" (emphasis added).

In its description of the relevant charges, the United States explained as follows:

Count 20

> "Defendant herein, used and carried a firearm during and *in relation to the commission of a drug trafficking crime*, that is, the attempted distribution of multi-kilogram quantities of mixtures containing cocaine, in violation of title 21, UNITED STATES CODE, Sections 841 (A)(1) and 846, and title 18, UNITED STATES CODE Section 2, as more fully set forth in count nineteen of this indictment which

8

crime may be prosecuted in a court of the UNITED STATES; in violation of title 18, UNITED STATES CODE, Sections 924(c) and 2," (emphasis added).

Count 32

"Defendant herein, used and carried a firearm during and *in relation to the commission of a drug trafficking crime*, that is, the attempted distribution of multi-kilogram quantities of mixtures containing cocaine, in violation of title 21, UNITED STATES CODE, sections 841(a)(1) and 846, and title 18, UNITED STATES CODE section 2, as more fully set forth in count thirty-one of this indictment, which crime may be prosecuted in a court of the UNITED STATES; in violation of title 18, UNITED STATES CODE, sections 924(c) and 2," (emphasis added).

In both 924(c) charges, the United States unambiguously alleges that Ramos carried a firearm in relation to drug trafficking, and not in relation to a crime of violence.

### c. Jury Verdict/Minute Order

The verdict form from Ramos' trial reflects that the jury found Ramos "guilty as charged in the indictment." The jury found Ramos guilty on counts 1, 2, 18, 19, 20, 30, 31, 32, 36, and 38. In its minute order, the Seventh Circuit noted that Ramos was found "guilty as charged in the superseding indictment." As noted *supra*, the superseding indictment reflected a charge of carrying a firearm in relation to drug trafficking, not in relation to a crime of violence.

### d. Ramos' Admission

In his initial § 2255 petition, Ramos admitted that he was charged with "racketeering under 18 U.S.C. § 1961, the Hobbs Act, 18 U.S.C. § 1951, attempt to

distribute multiple kilogram quantities of cocaine, 18 U.S.C. § 841, and possession of a firearm in relation to a drug offense, 18 U.S.C. § 924(c)." The pleading similarly states, "counts twenty and thirty-two charged using and carrying a firearm in relation to a drug trafficking crime." Ramos' own attorney noted that his client's gun charges were predicated on a drug trafficking crime, stating, "defendant Ramos [was] accused on two occasions of driving an escort car accompanying another vehicle which Ramos believed to contain a shipment of narcotics." Ramos' attorney also stated that, in the initial indictment, "Ramos was charged with carr[ying] a firearm during and in relation to the commission of a drug traffic crime."

### e. Prior Court Opinions

The Court and the Seventh Circuit have also described Ramos' conduct as using or carrying a firearm in relation to a drug trafficking offense, and not to a crime of violence. *Ramos*, 1998 WL 155932, at * 1 (finding that Ramos was charged with violating 18 U.S.C. § 924(c)'s inhibition of carrying a "firearm during and in relation to the commission of a drug trafficking crime"); *Moore*, 363 F.3d at 640—641 (Seventh Circuit's finding of enough evidence to support Ramos' conviction "for carrying a gun in relation to a drug trafficking offense").

If the sentencing hearing transcript was not unequivocal in and of itself, the record as a whole plainly is. Ramos was sentenced according to his conviction for having carried a firearm in relation to drug trafficking. Ramos' reliance on *Eskridge*, 445 F.3d, and *Zepeda*, 329 Fed. Appx, is misplaced. In *Eskridge*, a sentencing judge

imposed and then revoked concurrent sentences, but failed to clarify whether or not he was still dealing in concurrent terms during re-sentencing. *Eskridge*, 445 F.3d at 934. In his final re-sentencing order, the judge "did not indicate in the judgment order whether these were two (concurrent) terms or one term." *Id.* Indeed, the written judgment reflected that the defendant was to serve only a single term, rather than a concurrent term. *Id.* at 935.

To resolve the issue, the reviewing court sent for the sentencing hearing transcript. The transcript revealed that the judge orally sentenced the defendant to a single term, which was reflected in the lack of the word "concurrent" anywhere in the commitment order. *Id.* The Seventh Circuit held that "a district judge may still correct a final judgement in a criminal case to reflect the sentence he actually imposed but he cannot change the sentence he did impose even if the sentence was erroneous." *Id*. at 934. It appeared that the judge desired to impose two consecutive terms at re-sentencing, in keeping with the earlier stages of the case. Nonetheless, because he in fact imposed a single term at re-sentencing, both orally and in the commitment order, the Seventh Circuit required the district court to abide by that sentence.

In Ramos' case, the Court imposed the proper sentence, and is not seeking to alter it in anyway. We are merely acknowledging that a typographical error resulted in the wrong portion of a statute being reflected in the Judgment and Commitment Order. Beyond that clerical error, the sentence is entirely in keeping with Ramos' conviction.

In *Zepeda*, a district court orally sentenced the defendant to a 150-month term. The written judgment, however, recorded a 210-month term, to which the defendant was sentenced. *Zepeda*, 329 Fed.Appx. at 648. At the sentencing hearing, the judge commented that he was imposing a sentence at the bottom end of the guidelines, which was indeed a 210-month terms. The Seventh Circuit found that this comment injected ambiguity into the judge's oral 150-month term sentence. *Id*. at 649, 651. Therefore, the court issued an extremely limited remand, essentially asking the judge to clarify whether he meant to impose his orally proclaimed 150-month sentence, or the actually imposed 210-month sentence. *Id*. at 651.

The Court's pronouncements at Ramos' sentencing, on the other hand, were devoid of such manifest contradiction. While the Court expressed its profound disappointment in the sentences the law required, it at no point deviated from the requirements of the law, and imposed a sentence according to the 924(c) conviction guidelines. Here, we undertook an analysis of the record as a whole only to provide certainty to an oral sentence that lacked a statement articulating the specifics of Ramos' 924(c) convictions. The ambiguity created by the clerical error in the Judgment and Commitment Order is clarified by the consistency of the charging language littered throughout the record, which the legal reasoning of *Zepeda* has no bearing on.

Ramos' § 924(c) convictions and sentence attended a drug trafficking offense, not a crime of violence, and the Judgment and Commitment Order stating otherwise is

the result of an obvious typographical mistake. Ramos' petition to vacate, correct, or set aside his sentence pursuant to a successive 28 U.S.C. § 2255 motion is denied.

### III. Evidentiary Hearing

Ramos' motion for an evidentiary hearing is also denied. A § 2255 petitioner "is entitled to an evidentiary hearing on his claim where he alleged facts that, if true, would entitle him to relief." *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009). However, a hearing is not required where "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *Cooper v. United States*, 378 F.3d 638, 641—42 (7th Cir. 2004). Here, the record plainly demonstrates that Ramos is not entitled to relief. An evidentiary hearing, therefore, is inappropriate.

## CONCLUSION

For the foregoing reasons, Ramos' successive § 2255 motion is denied.

_____
Charles P. Kocoras
United States District Judge

Dated: 9/22/17